IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS O.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. 6:19-cv-01167-HZ

OPINION & ORDER

Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97407

Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Ryan Ta Lu
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Thomas O. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

**PROCEDURAL BACKGROUND**

Plaintiff applied for DIB on March 21, 2016, alleging an onset date of January 1, 1992. Tr. 16.[2] At the hearing, Plaintiff amended his application to allege an onset date of December 31, 2010. Tr. 37. Plaintiff's date last insured (DLI) was June 30, 2015. Tr. 18. His application was denied initially and on reconsideration. Tr. 16.

On May 22, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 36. On August 27, 2018, the ALJ found Plaintiff not disabled. Tr. 23. The Appeals Council denied review. Tr. 1.

**FACTUAL BACKGROUND**

Plaintiff alleges disability based on seizures, brain issues, and depression. Tr. 185. At the time of his alleged onset date, he was fifty-three years old. Tr. 148, 185. He has a high school

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

education and past relevant work experience as a landscape laborer and trailer assembler/inspector. Tr. 22, 39.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date through his date last insured. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "history of seizures, headaches." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following limitations:

> [H]e could never climb ladders, ropes, or scaffolds. He needed to avoid all exposure to workplace hazards such as heights and dangerous machinery.

Tr. 19. Because of these limitations, the ALJ concluded that Plaintiff could perform his past relevant work as a trailer assembler. Tr. 22. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 22–23.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony, discounting the opinion of Plaintiff's treating neuropsychologist, rejecting the lay witness testimony, and improperly evaluating Plaintiff's mental health disorder at steps two and three.

### I. Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and

convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

The ALJ rejected Plaintiff's subjective symptom testimony because it was inconsistent with the evidence in the record, inconsistent with Plaintiff's activities of daily living, because his seizure symptoms are controlled with medications, and because Plaintiff did not quit working due to his disability. Tr. 20–21. The ALJ did not identify any evidence of malingering in the record. *Id.*

A. Mental Health Symptoms

The ALJ found that Plaintiff's "[d]epression was noted in April 2016, which is after the date last insured[.]" *Id.* The ALJ further noted that Plaintiff's depression was first noted several years after he stopped working and that he had not received any mental health counseling. *Id.* The ALJ rejected Plaintiff's testimony concerning his difficulty getting along with coworkers because "there is nothing in the medical evidence of record from the time period at issue to support this." Tr. 20. The ALJ also noted that prior to his termination for using marijuana, Plaintiff had "no issues with his job performance. He testified that he got along with people." *Id.*

Plaintiff argues that he was diagnosed with depression and started on medication to treat it in June 2014 and that he continued to take it through the date last insured. An ALJ may reject a claimant's subjective symptom testimony relating to conditions that are not medically determinable impairments. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017) ("An individual's symptoms . . . will not be found to affect the ability to perform work-related activities . . . unless the medical signs or laboratory findings show a medically determinable impairment is present."). "Signs are anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id.*

The ALJ concluded that the record does not establish that Plaintiff's depression is a medically determinable impairment. Tr. 19. The Court agrees. Although Plaintiff complained of symptoms of depression twice before the date last insured, the ALJ is correct that Plaintiff's medical records contain no diagnosis of depression until April 2016. Tr. 443–469. Further, the medical evidence contains no indication that any medically acceptable clinical diagnostic techniques demonstrated signs of psychological abnormalities that could establish the existence

of a medically determinable mental impairment. Tr. 443–469. A prescription for a medication—here, Zoloft—coupled with Plaintiff's statements about having a depressed mood are insufficient to establish the existence of a medically determinable mental impairment. 20 C.F.R. § 416.921 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Because Plaintiff did not establish a medically determinable mental impairment that existed before his date last insured, the ALJ did not err in failing to consider the symptoms of his depression and other mental health and cognitive issues.

It was also appropriate for the ALJ to reject Plaintiff's subjective symptom testimony concerning his inability to get along with co-workers and supervisors. The ALJ made conflicting findings concerning whether Plaintiff testified that he had difficulty getting along with coworkers, but Plaintiff did in fact testify that he had issues getting along with others at work. Tr. 43–44 (Plaintiff's testimony that he had conflicts and became angry at supervisors or coworkers). The only mention of Plaintiff's alleged inability to get along with coworkers in the medical evidence appears after the date last insured. Dr. Fung noted in December 2015 that Plaintiff reported "difficulties in managing his frustration and irritability at his last job[,]" that Plaintiff "started to have lower frustration tolerance around 10 years ago[,]" and that he continued to be irritable. Tr. 299. None of Plaintiff's medical records during the relevant period document those symptoms. The medical records also are devoid of any medical signs establishing an inability to manage frustration and irritability. Tr. 443–469. As a result, the ALJ properly rejected this testimony because Plaintiff did not establish the existence of a medically determinable mental impairment which could be expected to produce some degree of those symptoms.

///

///

B. Activities of Daily Living

The ALJ noted that Plaintiff's care for his step-grandfather and grandchildren, activities which the ALJ noted "can be quite physically and mentally demanding," were "inconsistent with a complete inability to work." Tr. 20. The ALJ also noted that Plaintiff operated a lawn mower during the period at issue and played online poker daily. *Id.* The ALJ did not explain how those activities undermined his testimony concerning his symptoms of depression, cognitive issues, and seizures.

Plaintiff testified that caring for his step-grandfather involved getting him out of bed and putting him back to bed every day. Tr. 47. Plaintiff's wife assisted with cooking for his step-grandfather and doing his step-grandfather's laundry. *Id.* at 47–48. Plaintiff testified that taking care of his grandkids—ages six, four, and two—involved playing outside with them. *Id.* at 48. For some time, he provided daycare for his grandkids while his daughter was at work. *Id.* Plaintiff also testified that he sometimes played online poker. *Id.* Plaintiff testified that on average he spent one to two days a week in bed due to his depression symptoms. Tr. 47.

The ALJ's conclusion that Plaintiff's daily activities were "inconsistent with a complete inability to work" is not a clear and convincing reason to discount Plaintiff's testimony and is not supported by substantial evidence in the record. First, Plaintiff does not allege any physical limitations, so the physical demands of his daily activities and his ability to operate a lawn mower are irrelevant. Second, there is no evidence in the record concerning the frequency and duration that he cared for his grandchildren, whether his wife assisted him when he cared for the grandchildren, or whether it was emotionally taxing for him. As a result, the ALJ erred by rejecting Plaintiff's subjective symptom testimony based on Plaintiff's activities of daily living.

///

C. Control with Medications

The ALJ rejected Plaintiff's subjective symptom testimony concerning his seizures on the basis that his seizures remained controlled when he took his medications. Tr. 20. This conclusion is a valid reason that is supported by substantial evidence in the record. *See* Tr. 299 ("He attributed the onset of seizures to difficulties in adhering to taking seizure prophylactic medications as scheduled."); Tr. 45 (Plaintiff's testimony that his medications control his seizures). As a result, the ALJ did not err by rejecting Plaintiff's subjective symptom testimony on that basis.

D. Reason Plaintiff Quit Working

The ALJ also rejected Plaintiff's subjective symptom testimony because he quit working for reasons unrelated to his disabilities. Tr. 20. An ALJ may discount a claimant's testimony if the claimant works for several years with impairments and suffers no significant deterioration in their condition after their alleged onset date. *See Orozco v. Berryhill*, No. 1:16-cv-01807-SB, 2017 WL 5629532, at *6 (D. Or. Nov. 22, 2017) (affirming ALJ's discount of claimant's testimony because the claimant had previously engaged in substantial gainful activity while suffering from her impairments); *Schoonmaker v. Colvin*, No. 6:14-cv-01962-HZ, 2015 WL 6658669, at *6 (D. Or. Oct. 30, 2015) ("[T]he ALJ's finding that he was able to work for many years with his impairments, which had not significantly worsened after the alleged onset date, is supported by substantial evidence and is a reasonable basis for discounting Plaintiff's subjective symptom testimony.").

Plaintiff testified that he left his last place of employment in 2010 after he tested positive for marijuana. Tr. 42. He testified that he did not apply for jobs after 2010 because he was depressed. *Id.* at 40, 47. The ALJ explained that treatment notes after Plaintiff lost his job

reflected that Plaintiff "decided not to return to work." *Id.* at 20 (citing Tr. 299). As explained above, the record does not establish that Plaintiff's depression and cognitive complaints are medically determinable mental impairments. Plaintiff worked for many years with his seizure disorder, and his seizures during the relevant period—the first he had experienced in several years—occurred because he forgot to take his medications, not because his condition worsened. Tr. 449, 451, 458, 479. As a result, that reason is also supported by substantial evidence in the record.

**II. Medical Opinion Testimony**

Plaintiff argues that the ALJ erred by improperly rejecting the opinion of Ernest Fung, Psy.D., who performed a neuropsychological evaluation of Plaintiff. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 632; 20 C.F.R. § 416.927. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (same); 20 C.F.R. § 416.927(c). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675; 20 C.F.R. § 416.927(c)(2)-(6).

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Ford v. Saul*, 950 F.3d 1141, 1154–55 (9th Cir. 2020). To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings or is brief or conclusory. *Bray*, 554 F.3d at 1228.

Dr. Fung evaluated Plaintiff on December 11, 2015, about five and a half months after Plaintiff's date last insured. Tr. 298. Dr. Fung found that Plaintiff has probable minor unspecified neurocognitive disorder, moderate major depressive disorder, seizure disorder, borderline hypertension, and a history of brain injury. *Id.* at 305. Plaintiff's wife told Dr. Fung that Plaintiff's frustration intolerance began ten years earlier and had worsened over time. *Id.* at 299. Dr. Fung noted that Plaintiff had taken Zoloft for about six months but found it ineffective. *Id.* at 300. Dr. Fung also noted that Plaintiff had experienced new focal seizures and speech difficulties since October 2015. *Id.* at 299. Dr. Fung found that Plaintiff's difficulties with multitasking, low frustration tolerance, and irritability "could pose significant challenges in his return to the work environment." *Id.* at 304. Dr. Fung's report does not indicate that any of his findings demonstrated the existence of impairments before Plaintiff's date last insured.

The ALJ gave Dr. Fung's opinion no weight because Dr. Fung evaluated Plaintiff after the date last insured, Dr. Fung's evaluation was "not reflective of the claimant's functioning," and because Dr. Fung's opinion was inconsistent with the medical evidence during the time at

issue. Tr. 21. The ALJ did not explain her reasoning further. *Id.* An ALJ's assertion that a medical opinion is "inconsistent with unspecified 'treatment records' and unidentified evidence in 'the record as a whole' is not specific enough" to meet the ALJ's obligation to provide specific and legitimate reasons supported by substantial evidence in the record to reject a medical opinion. *Traglio v. Colvin*, No. 3:12-cv-01349-JE, 2013 WL 3809549, at *7 (D. Or. July 22, 2013). Instead, the ALJ is required to "explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1103 (internal quotation marks omitted). The ALJ did not explain what evidence undermines Dr. Fung's conclusions. It is unclear to the Court whether the ALJ believed that Dr. Fung's conclusions about Plaintiff's depression, seizures, or cognitive issues—or some combination of those findings—contradicted the medical evidence. The ALJ's finding that Dr. Fung's evaluation was "not reflective of the claimant's functioning" appears to be a reference to his activities of daily living, but the ALJ did not explain what activities were inconsistent with Dr. Fung's findings.

Finally, the ALJ erred by failing to explain why Dr. Fung's evaluation, conducted shortly after Plaintiff's insured status expired, compelled the conclusion that Dr. Fung's report should be given no weight in the disability determination. The Ninth Circuit has held that "[m]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996). "In fact, it is not uncommon that a physician's examination completed two or more years after the insured status expiration date is considered relevant." *Barnard v. Comm'r*, 286 F. App'x 989, 994 (9th Cir. 2008). However, "[a]fter-the-fact psychiatric diagnoses are notoriously unreliable." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Because the ALJ failed to explain any of the broad reasons she listed to discount Dr. Fung's opinion and failed to identify

evidence in the record supporting her decision, the ALJ erred by assigning no weight to Dr. Fung's opinion.

**III. Lay Witness Testimony**

Plaintiff argues that the ALJ erred by discrediting the lay witness statements of Plaintiff's sister and wife. Pl. Op. Br. 16–19.

A. Plaintiff's Sister

The ALJ gave little weight to the opinion of Plaintiff's sister, Tina O., because she did not identify which of Plaintiff's symptoms existed during the and after the time at issue, her observations are not substantiated by the medical evidence, and her description of Plaintiff's daily caregiving activities is inconsistent with an inability to work. Tr. 21–22. The ALJ may discount a lay witness opinion if she provides reasons that are germane to each witness. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). The ALJ's conclusion that Tina O.'s opinion is not substantiated by the medical evidence is not a reason germane to Tina O. *Diedrich v. Berryhill,* 874 F.3d 634, 640 (9th Cir. 2017) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). Plaintiff's daily caregiving activities, which Tina O. noted Plaintiff receives assistance with, also do not demonstrate an ability to work for the reasons described in section I above. Plaintiff's caregiving activities thus do not provide a reason germane to Tina O. to discount her testimony. Tina O.'s failure to identify which of Plaintiff's symptoms existed before his date last insured is a valid reason to discount Tina O.'s opinion. As a result, the ALJ did not err by assigning little weight to Tina O.'s lay witness testimony.

///

///

B. Plaintiff's Wife

The ALJ gave no weight to the testimony of Tracy O., Plaintiff's wife. Tr. 22. The ALJ noted that Tracy O. said that Plaintiff became depressed after he lost his last job and did not think about looking for another job because he could not figure out how to apply or look for a job. *Id.* (citing Tr. 250). The ALJ rejected Tracy O.'s opinion because Plaintiff "was fired for marijuana use, he never went to counseling, and there is no reason he could not have looked for a job." *Id.* None of those reasons are legally sufficient to reject Tracy O.'s lay witness testimony.

The ALJ's conclusion that Plaintiff lost his job because he used marijuana is consistent with Plaintiff's testimony. However, that fact says nothing about whether Plaintiff remained able to work during the relevant period. Additionally, Plaintiff's failure to seek counseling is not a valid reason to discount Tracy O.'s testimony concerning Plaintiff's symptoms, particularly because he sought treatment with his primary provider for his depression symptoms. Finally, Plaintiff's failure to look for new employment after he lost his job because he suffered from depression is unsupported by the record, as discussed above, so the ALJ could reject Tracy O.'s testimony that his symptoms of depression prevented him from seeking work. The ALJ thus provided a reason germane to Tracy O. for rejecting her testimony concerning Plaintiff's symptoms of depression.

**IV. Plaintiff's Mental Health Condition**

Plaintiff argues that the ALJ failed to "properly handle" Plaintiff's mental health disorder at steps two and three of the sequential analysis and failed to consider its limiting effects in formulating the RFC. Pl. Op. Br. 19–20. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen*, 482 U.S. at 153–54. The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20

C.F.R. §§ 404.1512, 416.912. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996)).

As discussed above, Plaintiff failed to establish that he had a medically determinable mental impairment before the date last insured. Because he failed to do so, the ALJ was not required to proceed further in the five-step analysis. *Yuckert*, 482 U.S. at 140–41. As a result, the ALJ did not improperly evaluate Plaintiff's mental impairments.

**V. Remand for Payment of Benefits**

Plaintiff cursorily argues that the Court should Dr. Fung's opinion as true and remand for an immediate payment of benefits. Pl. Op. Br. 11, 16, 20. The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three

elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency.) (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988)). Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly when the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

The Court finds that the ordinary remand rule is the proper remedy in this case. Although the ALJ provided no legally sufficient reasons to reject the opinion of Dr. Fung, it is unclear whether Dr. Fung's opinion, when properly considered, would change the ALJ's non-disability determination. Accordingly, the Court remands this case for further administrative proceedings.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED: August 17, 2021.

Marco Hernández

MARCO A. HERNÁNDEZ
United States District Judge